IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BASHIR OMAR, # N-61783** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 15-cv-1301-SMY |
| | ) |
| **ROBERT E. HUGHES,** | ) |
| **JASON N. HART,** | ) |
| **RICHARD HARRINGTON,** | ) |
| **JANE/JOHN DOES (IDOC & Menard)** | ) |
| **MICHAEL S. ROBESON,** | ) |
| **TARRY WILLIAMS,** | ) |
| **and MELISSA PHOENIX,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Stateville Correctional Center ("Stateville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was incarcerated in 2013 at Western Illinois Correctional Center ("Western") and Menard Correctional Center ("Menard"). They include allegations that he was beaten by Western officers and issued a false disciplinary report, deprived of shoes and nearly all clothing and denied due process in the disciplinary hearing which was held at Menard.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

While Plaintiff was incarcerated at Western on May 9, 2013, he was handcuffed, a chemical agent was sprayed in his eyes and he was beaten by Defendant Robeson and several other officers (Doc. 1, p. 5).  He was then stripped of all his clothing and shoes and left naked in a segregation cell for a few hours.  Defendant Williams (Warden of Western) saw Plaintiff's

clothing being removed and refused to do anything about it, even after Plaintiff asked him for help.  Defendant Robeson "fabricated" a disciplinary report to cover up the attack on Plaintiff (Doc. 1, p. 6).

Plaintiff was transferred to segregation at Menard where he spent about six months with only a single jumpsuit to wear, no shoes and no underwear (Doc. 1, pp. 5-6, 9).  Because he lacked shoes, he was unable to go to the segregation yard except for a few times when he was able to borrow shoes from his cellmate.  Defendant Phoenix (Menard counselor) failed to remedy Plaintiff's complaint(s) over his lack of clothing and shoes and Jane/John Doe Defendant(s) falsely stated that he had been issued those items (Doc. 1, pp. 5-6).

The hearing on Defendant Robeson's disciplinary report was conducted at Menard by Defendants Hughes and Hart (Doc. 1, pp. 7-8; 31-32).  Plaintiff was not properly served with a copy of the disciplinary report in advance of the hearing so he did not have sufficient opportunity to review the charges.  He was unable to request witnesses and was not allowed to see the camera footage of the incident.  The hearing was not held until May 27, 2013, which was outside the 14-day time frame provided in the prison rules.  His exhibits include the Adjustment Committee's summary (Ticket # 201300710/1-MEN issued on May 9, 2013) showing that he was charged with "601.Attempt/102 – Assaulting Any Person-Staff," and "403 – Disobeying a Direct Order" (Doc. 1, p. 31).

Plaintiff pled not guilty to attempting to head-butt and kick Defendant Robeson, pointing out that he could not have done that while he was choking and blinded from the chemical agent sprayed on him (Doc. 1, p. 8).  He told Defendants Hughes and Hart that Defendant Robeson and Lt. Fishel (who is not a party to this suit) each wrote him a disciplinary ticket to cover up the beating they inflicted on Plaintiff.  Defendants Hughes and Hart disregarded Plaintiff's evidence

and found him guilty based only on the issuing officer's statement in the disciplinary ticket (Doc. 1, p. 9). According to the report, Plaintiff was punished with one year in segregation as well as other sanctions (Doc. 1 p. 31).

Plaintiff further complains that he was subjected to double or triple punishment by being issued duplicate tickets for the same incident (Doc. 1, p. 10). He attaches the Adjustment Committee's report on the charges initiated by Lt. Fishel (Ticket # 201300699/1-MEN also issued on May 9, 2013) (Doc. 1, pp. 33-34), which shows that Plaintiff was charged with 102-Assault and 403-Disobeying an Order after Lt. Fishel searched Plaintiff and was poked in the finger by a pencil in Plaintiff's pocket. According to the report, Plaintiff demanded the pencil back, became combative when he was ordered to return to his cell without the pencil and struck Lt. Fishel in the eye while Lt. Fishel tried to restrain him. Staff sprayed Plaintiff with a chemical aerosol to subdue him (Doc. 1, p. 33). The hearing on these charges was conducted at Menard on May 17, 2013 by Officers Veath and Johnson (Doc. 1, p. 34). Plaintiff was found guilty and punished with one year in segregation and three months of his good conduct credits were revoked (Doc. 1, p. 34).

Defendant Harrington (Menard Warden) approved the imposition of punishment recommended by Defendants Hughes and Hart on the ticket issued by Defendant Robeson. The John/Jane Doe Defendant(s) Library Staff intentionally delayed sending Plaintiff's grievance over the disciplinary action which prevented him from using that process to obtain review. Other Jane/John Doe Defendants (of Menard Clinical Services, Supervisor and Grievance Officer) either held or disregarded all of Plaintiff's grievances filed over the claims herein (Doc. 1, pp. 11-12).

Plaintiff raises an Eighth Amendment claim that the denial of clothing and shoes

amounted to cruel and unusual punishment. He asserts that he was denied due process and equal protection in the disciplinary hearing over the ticket issued by Defendant Robeson. Finally, he claims he was denied access to the courts because his evidence was not investigated or preserved (Doc. 1, pp. 12-13). He seeks damages as well as injunctive relief including the expungement of Defendant Robeson's disciplinary ticket (Doc. 1, p. 14).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Claims under the Eighth and Fourteenth Amendments against Defendant Robeson (Western), for assaulting Plaintiff, issuing him a false disciplinary ticket, and failing to obtain medical attention for his injuries;
>
> **Count 2:** Eighth Amendment claim against Defendant Williams (Western) for failing to provide Plaintiff with clothing or shoes while he was in segregation at Western;
>
> **Count 3:** Eighth Amendment claim against Defendant Phoenix (Menard) and Jane/John Doe Menard Defendants, for subjecting Plaintiff to unconstitutional conditions of confinement, in that they failed to provide him with shoes or sufficient clothing for approximately six months;
>
> **Count 4:** Fourteenth Amendment claim against Defendants Hughes and Hart, for depriving Plaintiff of a liberty interest without due process when they punished him with one year in segregation after failing to follow proper procedures in his disciplinary hearing;
>
> **Count 5:** Claims against John/Jane Doe Menard Defendants, for delaying or disregarding Plaintiff's grievances and denying him access to the courts.

Counts 1 and 2 shall be dismissed from this action without prejudice as they involve incidents that did not occur within this judicial district and are duplicative of a pending action brought by Plaintiff in the Central District of Illinois. Count 3 survives threshold review and shall proceed for further consideration in this action. Counts 4 and 5 shall be dismissed for failure to state a claim upon which relief may be granted.

### Dismissal of Counts 1 & 2 – Defendants Robeson & Williams

Before bringing the instant lawsuit, Plaintiff filed an action in the Central District of Illinois based largely upon the same incidents he describes herein: *Omar v. Robeson, et al.*, Case No. 15-cv-3130 (C.D. Ill. filed April 30, 2015). Upon initial review, the Court explained to Plaintiff that his claims against the Menard Defendants (as well as other claims arising from his incarceration at Pontiac Correctional Center) could not proceed in the same lawsuit as his claims against the Western Defendants (Doc. 3 in CDIL Case No. 15-4085, July 15, 2015). *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits). The Court then severed Plaintiff's Menard claims and Pontiac claims into two more separate cases. The case encompassing the Menard claims (against Defendants Harrington, Phoenix, Hughes, and Hart) is *Omar v. Harrington, et al.*, Case No. 15-4085 (C.D. Ill.). The court instructed Plaintiff that if he wished to pursue those claims, he must file an amended complaint in that action by November 25, 2015 (Doc. 3 in CDIL Case No. 15-4085, July 15, 2015).

Rather than comply with the Central District's order, Plaintiff chose to initiate a new case in this Court on November 23, 2015 by filing the complaint that is the subject of this order. Ignoring the admonition of the Central District regarding *George v. Smith* and the improper joinder of claims/parties, he has included the unrelated Western Illinois Correctional Center

claims and Defendants in the instant case. Those matters, contained in Counts 1 and 2, cannot continue in the instant action – the claims arose at Western based on distinct incidents that occurred in the jurisdiction of the Central District of Illinois. Severance of these claims, however, appears to be unnecessary because Plaintiff's still-pending action in the Central District includes the same Defendants (Robeson and Williams) he names herein. Therefore, Counts 1 and 2 and Defendants Robeson and Williams shall be dismissed without prejudice from this action. Plaintiff may pursue those claims in his Central District case subject to the orders of that court.

### Count 3 – Unconstitutional Conditions of Confinement – Menard

Plaintiff was transferred to Menard on or about May 9, 2013. His clothing and shoes had been taken from him at Western and those property items were apparently never returned to him. At some point, he complained to his counselor, Defendant Phoenix, about the fact that he had only one jumpsuit and no underwear or shoes (except for shower shoes). The affidavit of Plaintiff's cellmate states that Defendant Phoenix visited their cell on June 4, 2013 and that Plaintiff informed her he lacked shoes and underwear (Doc. 1, p. 20). He filed several grievances, but went for six months without being issued a change of clothing, underwear or shoes. Plaintiff further claims that Jane/John Doe Defendant(s) falsely reported that clothing and shoes had been given to Plaintiff during that six month period (Doc. 1, pp. 5-6).

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452

U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eighth Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987). The second, subjective element of a conditions claim requires the plaintiff to establish the defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

In Plaintiff's case, the initial question is whether having only one jumpsuit to wear for a six-month period, no underwear (but for a used garment from Plaintiff's cellmate) and no regular shoes amounted to a "serious deprivation" of a basic human need which subjected Plaintiff to a substantial risk of serious harm. Certainly, adequate clothing is a basic human need. Plaintiff had the minimal items necessary to cover his body and feet – but not enough to provide for a change of clothes when his single jumpsuit became dirty. His shower shoes gave him some protection to move from place to place in the prison, but were not suitable to allow him to engage in the limited yard recreation that he was offered while in segregation.

A colorable Eighth Amendment claim arises where a prisoner's clothing is insufficient to provide protection from weather conditions, *see Smith v. Peters*, 631 F.3d 418, 420 (7th Cir. 2011); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Here, however, Plaintiff does not

allege that his single jumpsuit failed to keep him warm or to protect him from the elements. Rather, his claim squarely focuses on the fact that he had no change of clothes, no adequate shoes and virtually no undergarments for six months. Some courts have found that similar circumstances satisfy the objective component of an Eighth Amendment violation. *See Hazen v. Pasley*, 768 F.2d 226, 228 n.2 (8th Cir. 1985) (detainees had only one set of clothes for four months; district court found that "[a]lthough the practice of requiring detainees to wash and dry their own clothing is not unconstitutional per se, the Court finds that requiring detainees to wait in varying degrees of undress while their clothes are drying is impermissible"); *Carter v. Meisner*, No. 12-cv-574-WMC, 2014 WL 5580917, at *8-9 (W.D. Wis. Oct. 31, 2014) (plaintiff satisfied the objective portion of a claim for unconstitutional conditions where he had only a single set of clothing for one year); *Evans v. Headley*, 566 F. Supp. 1133, 1138 (S.D.N.Y. 1983) (prisoner stated an Eighth Amendment claim where jail supplied only one set of clothing for a 45-day period). Accordingly, at this stage, the complaint indicates that Plaintiff suffered an objectively serious deprivation of necessary clothing.

As to the subjective component of Plaintiff's claim, it appears that Defendant Phoenix was aware of his lack of clothing and shoes, but may have failed to take steps to remedy that deprivation. The same may be true of the Jane/John Doe Defendant(s). **Count 3** thus survives threshold review under § 1915A and this claim shall proceed for further consideration.

**<u>Dismissal of Count 4 – Due Process – Disciplinary Ticket Issued by Defendant Robeson</u>**

The Supreme Court has stated that in order to satisfy due process concerns, an inmate must be given 24-hour advance written notice of the disciplinary charge before he is called to the disciplinary hearing, the right to appear before the hearing panel, the right to call witnesses if prison safety allows and a written statement of the reasons for the discipline imposed. *Wolff v.*

*McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision to impose discipline must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

In reference to the disciplinary charges of attempted assault and disobeying an order (Ticket # 201300710/1-MEN, hereinafter referred to as the "Robeson ticket"), Plaintiff points to two potential due process violations. Defendants Hughes and Hart allegedly failed to give Plaintiff sufficient notice in advance of the hearing and he was not permitted to call witnesses. However, even if the hearing did not comply with due process requirements, Plaintiff still may not have a cognizable claim.

A prisoner who is punished with segregation may only pursue a claim for deprivation of a liberty interest without due process of law under very limited circumstances. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). Under *Sandin*, the key "hardship" comparison must be made "between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

Courts consider two elements to determine whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the length of the disciplinary segregation. For

relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence").

Plaintiff was punished with one year in disciplinary segregation for the Robeson ticket. This period may be sufficiently long to prompt an inquiry into the conditions of Plaintiff's disciplinary confinement, even in the context of Plaintiff's 60-year sentence. However, Plaintiff provides no information whatsoever on the conditions he faced during the one-year period he spent in disciplinary segregation *as a result of the Robeson ticket*. His exhibits reflect that before the Robeson ticket was heard on May 27, 2013, Plaintiff had already been found guilty on May 17, 2013 of assault and disobeying an order based on Ticket # 201300699/1-MEN (the "Fishel ticket"). He was given one year in segregation and lost good conduct credits as a result.

The one-year period of disciplinary segregation that immediately followed the hearing on the Fishel ticket was, therefore, a period of punishment attributable to that disciplinary infraction and not to the Robeson ticket. The fact that Plaintiff was not furnished with sufficient clothing during the first six months of his disciplinary confinement at Menard (starting in May 2013) is relevant only to the Fishel ticket and not to the claim based on the Robeson ticket in Count 4. The report on the Robeson ticket specifies that the one-year disciplinary segregation term, as well as all other punishment for that infraction, was imposed "Consecutive to any priors" (Doc. 1, p. 31).[1] Based on this documentation, Plaintiff would not have begun to serve his segregation on the Robeson ticket until approximately May 9, 2014 – after completing the one-year term on the Fishel ticket. The complaint is silent regarding the conditions Plaintiff faced in segregation

---

[1] The conclusion that Plaintiff received two consecutive one-year terms of segregation is borne out by Plaintiff's statement that he was subjected to double punishment for the same May 9, 2013, incident.

at that time and does not even disclose the prison where Plaintiff was confined for the period starting in May 2014. As such, the instant complaint fails to state a claim upon which relief may be granted for deprivation of a liberty interest without due process connected to the hearing on the Robeson ticket conducted by Defendants Hughes and Hart. Accordingly, **Count 4** against Defendants Hughes and Hart shall be dismissed without prejudice. Defendant Harrington (Menard warden) is mentioned only in connection with this claim. Thus he shall also be dismissed from the action.

If Plaintiff believes that the conditions he faced in disciplinary segregation for the year following May 2014 subjected him to "atypical and significant hardships," he may re-plead the claim in Count 4 by submitting an amended complaint in this action in compliance with the schedule to be determined by the Magistrate Judge. Plaintiff shall note that if he submits an amended complaint, it must also contain the facts supporting Count 3, because an amended complaint supersedes and replaces the original complaint. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). Any amended complaint shall be subject to a merits review under § 1915A and unrelated claims against defendants not included in Count 3 are subject to being severed into a separate case for which an additional filing fee shall be imposed.

### Dismissal of Count 5 – Mishandling of Grievances/Access to the Courts

This claim encompasses Plaintiff's allegations that John/Jane Doe Defendant Library Staff purposely delayed Plaintiff's grievance paperwork regarding the disciplinary ticket and that other grievances regarding Plaintiff's remaining claims were either disregarded or held up by Jane/John Doe Defendants in other departments. He suggests that this conduct denied him access to the courts, but does not explain how any legal proceeding was compromised. None of

these allegations state a constitutional claim upon which relief may be granted.

The mishandling or failure to respond to grievances does not implicate any constitutional right. Plaintiff's efforts to exhaust his administrative remedies regarding the claims herein by using the prison grievance process may become relevant in the event that a Defendant raises a challenge to Plaintiff's ability to maintain a § 1983 suit over the substantive matters raised in the grievances. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Nonetheless, a Defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Plaintiff succeeded in filing the instant action and has filed claims that are currently pending in the Central District of Illinois. Nothing in the instant complaint suggests that the problems with his grievances hindered him from bringing these or any other court actions. Therefore, **Count 5** shall be dismissed without prejudice.

## Disposition

**COUNTS 1 and 2** are **DISMISSED** without prejudice as duplicative of Plaintiff's pending action in the Central District of Illinois (*Omar v. Robeson, et al.*, Case No. 15-cv-3130 (C.D. Ill. filed April 30, 2015)). **COUNTS 4 and 5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **HUGHES, HART, HARRINGTON, ROBESON,** and **WILLIAMS** are **DISMISSED** from this action without

prejudice.

As to the remaining claims in **COUNT 3**, the Clerk of Court shall prepare for Defendant **PHOENIX**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John/Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel.  Any paper

received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* F<small>ED</small>. R. C<small>IV</small>. P. 41(b).

  **IT IS SO ORDERED.**

  **DATED: January 5, 2016**

              <u>s/ STACI M. YANDLE</u>
              United States District Judge